### In re TOMPKINS.

#### Appeal of BALLUFFI et al.

(Supreme Court, Appellate Division, Second Department.   December 31, 1897.)

MANDAMUS—CANVASSERS OF COUNTY ELECTION—REVIEW OF PROCEDURE.
   A review of the action of a board of canvassers in counting ballots at an election must be sought in proceedings instituted by writ of mandamus issued out of the supreme court, under section 114 of the "Election Law" (Laws 1896, c. 909); and the provision of section 111, authorizing the open-ing of votes, and the examination of their contents, "upon the order of *   *   *   a county judge." confers no authority upon a county court to judicially investigate, either upon petition or otherwise, the manner in which the right of suffrage has been exercised.

Appeal from Westchester county court.
In the matter of the application of C. Wesley Tompkins, candidate for overseer of the poor, for recount of the ballots of the Ninth elec-

tion district of the town of Cortlandt.   John W. Balluffi and Tompkins appeal.   Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Eugene B. Travis, for John W. Balluffi.
Robert McCord, for C. Wesley Tompkins.

WILLARD BARTLETT, J.   This is the most extraordinary proceeding which we have ever been called upon to review under the existing election law (Laws 1896, c. 909).   It arises out of a controversy concerning the number of votes cast for C. Wesley Tompkins and John W. Balluffi, who were rival candidates for the office of overseer of the poor of the town of Cortlandt, in the county of Westchester, at the town election in March, 1897.   On the face of the returns, Balluffi appeared to have been elected, and he received a certificate of election.   Tompkins thereupon presented a petition to the county judge of Westchester county, alleging that the vote of the Ninth district of the town of Cortlandt had been illegally and wrongfully canvassed to such an extent that he had been deprived of at least nine votes, which were more than sufficient to have elected him; and he prayed that the county court would order a recount of the vote in that district.   Upon this petition, after hearing counsel for Balluffi, the county court made an order that the vote of the town of Cortlandt should be recanvassed and recounted by the board of town canvassers, in the presence of a referee named in said order, who was instructed to report the result of the canvass to the court with all convenient speed.   Under this order the board of canvassers convened before the referee thus appointed, and recounted and recanvassed the vote of the town in his presence.   During the process of the recount, says the referee in his report, various objections as to the counting of particular ballots were made from time to time by members of the board and by the attorneys for Tompkins and Balluffi, respectively.   "These objections were ruled upon by the referee, and the ballot counted or not counted in accordance with such ruling."   Upon the completion of the recanvass and recount thus conducted, the board declared and certified the result in writing, and it was thus made to appear that Tompkins, instead of Balluffi, had been elected to the office of overseer of the poor.   The report of the referee then came before the county court upon a motion for confirmation, and it was declared confirmed by the final order herein, which further expressly sustained the action of the referee in his counting or refusing to count certain numbered ballots, and disapproved his action in respect to certain others.   The final order also directed that, it appearing that C. Wesley Tompkins had received one more vote for the office of overseer of the poor than John W. Balluffi, and that he, the said C. Wesley Tompkins, was entitled to said office, the board of canvassers should immediately issue a certificate of election to the said Tompkins; and that upon his taking the constitutional oath of office, and filing the bond required by law, he enter upon the discharge of his duties, and be recognized as such

overseer of the poor. The order concluded with an injunction restraining John W. Balluffi from thereafter acting as such overseer.

I am unable to find in the election law any authority whatever for such a proceeding as this by any court, or any authority for the exercise of jurisdiction on the part of a county court in such a case as was presented by the petition herein. The counsel for Mr. Tompkins, who desires to maintain the validity of the order, although he contends that it did not go far enough in his favor, refers us only to the last sentence of section 111 of the election law. That section is entitled, "Original Statement of Canvass and Certified Copies," and it consists almost wholly of provisions relating to the manner in which the statement of the canvass shall be made up, and the disposition which shall be made of the ballots voted. It concludes with this direction in regard to such voted ballots, which is the provision relied upon as conferring jurisdiction upon the county court to recount the vote for overseer of the poor in the case at bar:

"They shall be preserved inviolate for six months after such election and may be opened and their contents examined upon the order of the supreme court or a justice thereof, or a county judge of such county, and at the expiration of such time the ballots may be disposed of in the discretion of the officer or board having charge of them."

In our opinion, this provision is merely intended to prescribe what tribunal or officers might direct the opening and examination of the voted ballots in case such opening and examination were necessary and appropriate in any judicial proceeding which might be instituted relating to the election. It does not assume to authorize anything more; and we cannot resort to implication to introduce a grant of authority to a court which is not even mentioned therein to judicially investigate the manner in which the right of suffrage has been exercised. Ample authority in this direction is conferred upon the supreme court, but not upon any other tribunal, by section 114 of the election law, which is entitled "Judicial Investigation of Ballots." That section authorizes a review of the action of the board of canvassers upon the application of any candidate voted for at an election in two cases: (1) Where the certified original statement of the result of the canvass in an election district shall show that any of the ballots counted at the election were objected to as marked for identification, and (2) where a ballot has been rejected by the inspectors as void. In each instance the proceeding must be instituted by a writ of mandamus issued out of the supreme court; and, if the court determines that any ballots were marked for identification, it must order such ballots to be excluded upon a recount; and, if it shall determine that the votes upon a ballot rejected as void ought to be counted, it must order them so to be counted upon a recount of such votes. An example of the proper procedure under this section is afforded by the recent hearing in the supreme court before Mr. Justice Dykman on the writ of mandamus under which a recount was ordered of the votes cast for the office of the presidency of the borough of Richmond. Even if the county court had possessed jurisdiction, its action in referring the matter to a referee to personally supervise the recount and order the board of canvassers what bal-

lots to treat as valid and what ballots to reject, before the learned county judge himself had passed upon such ballots, seems to us a proceeding of very questionable propriety.

The order appealed from must be reversed for want of jurisdiction in the county court, without prejudice, however, to a proceeding in the supreme court under section 114 of the election law. All concur.