(34 Misc. Rep. 411.)

### In re VAN COTT.

(Supreme Court, Special Term, New York County. April, 1901.)

ELECTIONS—INSPECTION OF BALLOTS.
  Under Laws 1896, c. 909, § 135, as amended by Laws 1897, c. 379, § 23, declaring that sealed packages of void and protested ballots shall be retained inviolate in the office in which they are filed, subject to the order of a court of competent jurisdiction, the supreme court, on an application of a candidate defeated in a close congressional district alleging that ballots cast for him were excluded by the inspectors of election, can order an inspection of such ballots, though no contest of election has been begun.

Application of Richard Van Cott to inspect void and protested ballots filed in the office of the clerk of the county of New York in sealed packages by the inspectors of election laws. Application granted.

Alfred R. Conkling, for petitioner.

John Whalen, Corp. Counsel (Arthur C. Butts, of counsel), opposed.

BLANCHARD, J. This is an application under section 135 of the election law of the state, as amended by section 23, c. 379, of the Laws of 1897, for an inspection of the void and protested ballots filed in the office of the clerk of the county of New York in sealed packages by the inspectors of election, pursuant to the provisions of that statute. The petitioner was a candidate at the general election held on November 6, 1900, for the office of congressman for the Eighth congressional district of the state of New York. The official canvass of the votes cast in that congressional district shows Thomas J. Creamer, the successful candidate, to have received 173

more votes than the petitioner. It further shows that there were 213 blank ballots and 31 defective ballots cast for the office in question. That provision of section 135 of the election law under which petitioner founds his right to the relief here sought reads as follows:

"The sealed packages of void and protested ballots shall be retained inviolate in the office in which they are filed subject to the order and examination of a court of competent jurisdiction, and may be destroyed at the end of six months from the time of the completion of such canvass, unless otherwise ordered by a court of competent jurisdiction."

There has been no judicial interpretation of the statute. I am therefore called upon to decide the meaning of this provision without the aid or assistance of any decided case. The past history of the legislative enactments on this subject may perhaps throw some light on the intention of the legislature respecting the present statute. The election law of 1842 (Laws 1842, c. 130, tit. 4, § 42) provided that all defective ballots should be annexed to the statement of the canvass by the inspectors of election. It did not provide that defective ballots should be separately sealed. Such remained the law for many years. There was nothing that was intended to be kept secret in the ballots. In fact, the whole history of legislation on this subject indicates a desire to avoid secrecy in all matters pertaining to a count of the votes. The subsequent change in the law directing the sealing and filing in separately sealed packages of the defective ballots was, in my opinion, not directed towards securing any additional secrecy, but rather to a matter of convenience to the inspectors of election in making up their returns, and to the boards of canvassers in the canvass of the votes, because of the large number of such ballots and the cumbersomeness of the returns, and, possibly, because of greater safety in their care for future use. I conclude, therefore, that the provision of the statute for an inspection and examination of the ballots contained in sealed packages should receive a liberal interpretation, so as not to bar the defeated candidate from the right to see ballots which have been thrown out by inspectors, in which he may have a vital interest. It is argued in opposition to this application that such an examination should not be ordered except where some proceeding is pending in a tribunal competent to determine the question as to whether or not the ballots were properly rejected. I find no justification in the statute for such a limitation of the right to an examination. It will be observed that the statute provides for an examination of the ballots by order of "a court of competent jurisdiction," and also for the preservation of the sealed packages of ballots for a longer period than six months upon an order of "a court of competent jurisdiction." It would be unreasonable to contend that the court is without power to direct the preservation of the ballots upon the application of a defeated candidate or other interested party. The right of the court to make such an order is conceded by the corporation counsel, who opposes this application. Yet the language used in that part of the statute relating to the preservation of ballots is substantially similar to that for the examination of the ballots. Again, it is urged in opposition to this application that the

future probative value of the ballots will be materially impaired if the seals of the packages be broken. I see nothing sacred about these seals. The packages can be opened, and the ballots examined, and the packages resealed. The examination may take place with such precaution as may be suggested; if necessary, in the presence of the court. Other documents just as valuable as these ballots are examined frequently without affecting their value as proof. So, I see no cause for denying the petitioner's application for this reason. It is of the highest importance that the will of the electors shall be properly recorded, and, if ballots have been erroneously rejected which should have been counted, I deem it to be in furtherance of justice to permit the petitioner to have the desired inspection of those ballots, so that, if any error has been committed, proceedings may be taken to have the will of the people properly recorded. It can do no harm to have this knowledge in possession of petitioner prior to any congressional contest. It does not occur to me to be an objection that the contest has not as yet been made. The inspection of these ballots may be the means of avoiding a contest by satisfying the petitioner that he has no case. In that event the successful candidate would undoubtedly be spared much trouble and expense. Besides, the petitioner should not be put to the expense of a congressional contest in order to secure an inspection of these ballots. The affidavits of two inspectors of the Fifth election district of the Fifth assembly district are produced, showing that 12 ballots which were claimed to have been marked for identification, and the votes on which were cast for petitioner, were not counted. This proof is not contradicted, nor are these facts disputed. If such a condition existed in one election district, a similar occurrence may possibly have been presented in other districts. At any rate, I think it in the interests of justice that the application should be granted. The two decisions to which I am referred (In re Election, 18 Misc. Rep. 391, 43 N. Y. Supp. 710, and In re Tompkins, 23 App. Div. 224, 48 N. Y. Supp. 737) are under a different section of the law and on a different state of facts, and have no application here. This application is granted.

Application granted.